UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DIEGO MORCOTE,

        Plaintiff(s),

  v.

ORACLE CORPORATION, ET AL.,

        Defendant(s).
_____/

Case No. C-05-0386 JCS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [Docket No. 17]**

## I. INTRODUCTION

On Friday, November 18, 2005, at 9:30 a.m., Defendants' Motion to Dismiss (the "Motion") came on for hearing. For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

## II. BACKGROUND

### A. Facts

Defendant Oracle is a Delaware corporation with its principle place of business in Redwood Shores, California. First Amended Complaint("FAC"), ¶ 9. Defendant Juana Schurman is a resident of San Francisco and at all relevant times was a Vice President and Associate General Counsel to Oracle. FAC, ¶ 10. Morcote is a Florida resident and was employed by Oracle for seven years as a technical manager. FAC, ¶¶ 8, 11.

In 2003, Morcote began performing work for Oracle at the Cincinnati Public Schools ("CPS"), under the supervision of Oracle manager Frank Carchedi. FAC, ¶ 12. Morcote alleges that Carchedi discriminated against him on the basis of race and that on May 6, 2004, he was constructively discharged by Oracle. FAC, ¶¶ 13-20.

Following his termination, Morcote continued to work at CPS on behalf of another employer. FAC, ¶ 20. He alleges that during the spring of 2004, various Oracle employees, including Carchedi, threatened him that Oracle would initiate legal action against him for his work at CPS following his departure from Oracle on the basis that it violated the Proprietary Information Agreement ("PIA") Morcote had entered into with Oracle. FAC, ¶¶ 23. The PIA is attached to the First Amended Complaint and contains the following non-compete provisions:

> I acknowledge that as a result of my Oracle employment, I may develop, receive or otherwise have access to confidential or proprietary information which is of value to Oracle. I therefore agree, as a condition of employment, to abide by the following terms and conditions:
>
> . . .
>
> 5.  I will not during my Oracle employment and for a period of six months after the termination of my Oracle employment, directly or indirectly, whether through a third party or otherwise, invite or otherwise encourage any Oracle employee to accept an employment or independent contractor or other business relationship with an employer or entity or person other than Oracle.
>
> . . .
>
> 8.  I will not, for a period of six months after the termination of my Oracle employment, for my own account, or for the account of any other person or entity, solicit, call on or provide competing services for any of Oracle's customers or clients or prospective customers or clients if I have solicited, called on or performed services for that Oracle customer or client or prospective customer or client during the twelve months preceding my termination from Oracle.

FAC, Ex. B. The PIA also contains a forum selection clause that provides as follows:

> I agree that any legal action or proceeding involving Oracle which is in any way connected with this agreement may be instituted in any state or federal court located in San Francisco or San Mateo County, California. I agree to submit to the jurisdiction of, and agree that venue is proper in, the aforesaid courts in any such legal action or proceeding.

*Id*.

On May 18, 2004, Oracle Vice President and General Counsel Juana Schurman sent a letter to Morcote to "remind [him] of [his] continuing obligations to Oracle" under the PIA. FAC, Ex. D. In the letter, she states, in part, as follows:

> It has come to our attention that you will be providing consulting services to Cincinnati Public Schools on behalf of your new employer. This causes us concern because you also provided consulting services to Cincinnati Public Schools while you were employed by Oracle. You are contractually obligated not to engage in such employment. Oracle expects that you will abide by your contractual obligations and refrain from any further improper conduct in relation to Oracle clients.
>
> Violations of your agreement with Oracle may give rise to legal claims being made against you for causes of action including, but not limited to, breach of contract, misappropriation of trade secrets, unfair competition and interference with prospective business advantage. Such legal claims, if successful, could force you to disgorge any profits that you may gain as a result of any improper action you took and could result in the award of other damages to Oracle.
>
> Please also note that Paragraph 5 of your Proprietary Information Agreement provides that for six months following the termination of you Oracle employment you are not allowed to recruit or hire any Oracle employee without Oracle's written consent. Additionally, you forever are prohibited from using or disclosing Oracle confidential information to Oracle's disadvantage. Confidential details of internal employee structure and assignment, employee compensation and employee capabilities, duties and skills, all of which you had access to during your employment at Oracle, are considered trade secrets and may not be used by you. As Oracle's employees are among its most important assets, we take this covenant seriously and will enforce it to the extent necessary.

*Id*.

### B.  Procedural Background

On January 26, 2005, Morcote filed the complaint in this action, asserting seven claims: 1) Unfair Competition; 2) Intentional Interference with Prospective Economic Advantage; 3) Negligent Interference with Prospective Economic Advantage; 4) Intentional Interference with Contractual Relations; 5) Intentional Infliction of Emotional Distress; 6) Negligent Infliction of Emotional Distress; and 7) Declaratory Relief. Morcote's seventh claim seeks a declaration that: 1) California law governs the PIA; and 2) the non-compete clauses of the PIA are therefore invalid. Morcote named as Defendants both Oracle Corporation and Juana Schurman.

Morcote's First Amended Complaint includes six additional claims: 8) Constructive Discharge in Violation of Public Policy Under California Law; 9) Constructive Discharge in Violation of Public Policy Under Florida Law; 10) Constructive Discharge Under Federal Law (42 U.S.C. § 1981, *et. seq.* and 42 U.S.C. § 2000e, *et. seq.*); 11) Discrimination in Employment in Violation of 42 U.S.C. § 1981, *et. seq.*; 12) Discrimination in Employment in Violation of 42 U.S.C. § 2000e, *et. seq.*; and 13) Discrimination in

Employment in Violation of Florida Civil Rights Act of 1992 (F.S.A. § 760.01, *et. seq.*).

### C. The Motion

In the Motion, Oracle asks the Court to dismiss all claims against Juana Schurman and to dismiss the unfair competition and declaratory relief claims, Claims One and Seven, respectively, in their entirety. Oracle argues that Schurman cannot be individually liable as to Morcote's unfair competition and declaratory relief claims (Claims One and Seven), the tortious interference claims (Claims Two, Three, and Four), or the discrimination claims (Claims Eight through Thirteen) because the only act she was alleged to have taken – sending the May 18, 2004 letter to Morcote – was taken by Schurman on behalf of and as an agent of Oracle. In addition, Oracle argues that the claims for negligent and intentional infliction of emotional distress (Claims Five and Six) must be dismissed because no outrageous conduct is alleged in the complaint.

Oracle asserts that Morcote's unfair competition claim (Claim One) fails as to all Defendants because he has alleged no damages. Oracle argues that Claim Seven (seeking a declaration that California law applies and the non-compete provisions of the PIA are invalid) fails for two reasons: 1) the claim is moot because the non-compete provisions expired six months after Morcote's termination and before he filed the complaint in this action; and 2) the agreement is governed by Florida law, under which such non-compete provisions are valid.

In his Opposition, Morcote concedes that Claim One fails to state a claim as to any Defendant. Morcote also concedes that Claims Eight through Thirteen (the discrimination claims) and Claim Five (intentional infliction of emotional distress) fail to state a claim against Juana Shurman. Morcote argues that the remaining claims against Juana Schurman – Claims Two, Three, Four (the tortious interference claims), and Claim Six (negligent infliction of emotional distress) – state claims for relief against Schurman. In particular, Morcote asserts that such claims may be asserted against a managerial employee who has engaged in wrongful conduct and further, that he has alleged wrongful conduct, namely, a threat to enforce an invalid non-compete agreement. Morcote also notes that as to Claim Six, for negligent infliction of emotional distress, there is no requirement of outrageous conduct and therefore, Oracle's motion fails as to that claim because it fails to articulate any other basis for dismissal.

4

1    With respect to Claim Seven, for declaratory relief, Morcote asserts that dismissal under Rule 12(b)(6) is improper for several reasons. First, Morcote rejects the assertion that the claim is moot, arguing that Oracle could still sue him under the non-compete provision for his employment with CPS in the six months following his termination. Morcote further asserts the claim is not moot because the questions Morcote asks the Court to determine – the applicable law and whether the non-compete agreement is valid – will serve as a predicate for determining liability as to Morcote's other claims. Second, Morcote asserts that California law, not Florida law, governs the PIA and under California law, it is undisputed the non-compete provisions are invalid. Even if the Court does not conclude that California law applies, Morcote asserts, there is, at minimum, a fact question regarding choice of law that precludes dismissal of this claim.

In its Reply, Oracle reiterates its arguments that Schurman cannot be sued for tortious interference. With respect to the claim for negligent infliction of emotional distress, Oracle asserts, for the first time, that this claim fails because the alleged conduct was intentional rather than negligent. As to Claim Seven, Oracle again asserts that the claim is moot and that in any event, the non-compete agreement is valid because Florida law must be applied.

## III. ANALYSIS

### A. Legal Standard

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff can fail to state a claim by either failing to present a cognizable legal theory or failing to plead sufficient facts to support such a theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In deciding a Rule 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.* 80 F.3d 336, 337-38 (9th Cir. 1996). A court should not dismiss a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A court should grant leave to amend, even if not requested, unless the defects in the pleading cannot possibly be cured by allegation of other facts. *Lopez v. Smith*, 203 F.3d 1222, 1130 (9th Cir. 2000) (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### B. Claim Seven (Declaratory Relief)

Defendants assert that Morcote's claim for declaratory relief fails for two reasons. First, Defendants argue that the claim is moot because the non-compete provision of the PIA expired six months after Morcote's termination, in November 2004, and Morcote did not bring this action until January 2005. Second, Defendants assert that even if the claim is not moot, it fails because, as a matter of law, Florida law rather than California law applies, and under Florida law, the non-compete provision in the PIA is valid.[1] The Court concludes the claim is moot and therefore does not reach the second issue.

The Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201. The purpose of the act is to "avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until an adversary should see fit to begin suit, after damage had accrued." *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167 (7th Cir. ), *cert. denied*, 395 U.S. 959 (1969). An "actual controversy" exists when there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). "[T]he requisite case or controversy is absent where a plaintiff no longer wishes – or is no longer able – to engage in the activity concerning which it is seeking declaratory relief." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005). Where there is no actual controversy, the court is required to dismiss the action as moot. *Allard v. DeLorean*, 884 F.2d 464, 466 (9th Cir. 1989).

Here, Oracle asserts that because the six month non-compete provision in the PIA has already expired, there can be no case or controversy. Morcote, on the other hand, argues that there is an actual controversy because he could still be sued for his past work at CPS, while the non-compete provision was still in effect. Morcote is correct that Oracle could still assert a claim for violation of the PIA, given that the applicable statutes of limitations is either four years (under California law) or five years (under Florida law).

---

[1] Defendants do not dispute that the provision is invalid under California law.

6

Nonetheless, the Court concludes the possibility that Oracle may sue him under the PIA for past conduct is not sufficient to create an actual controversy where there is no possibility that any further damages can accrue under the PIA in light of the fact that it has expired.  As stated above, the purpose of the Declaratory Judgment Act is to "avoid the accrual of avoidable damages" by allowing a potential defendant to bring an action clarifying the rights and obligations of the parties earlier rather than later.  *Cunningham Bros., Inc.*, 407 F.2d at 1167.  The mere possibility that a declaratory judgment plaintiff might be sued for damages that have already accrued has been deemed insufficient to create an actual controversy.  *See Gladwell Governmental Servs. v. County of Marin*, 2005 WL 2656964 (N.D. Cal.) (citing *Calderon v. Ashmus*, 523 U.S. 740, 746-747 (1998) for proposition that "there is no case or controversy where an action seeks declaratory relief as to the validity of defenses that the defendant may or may not advance in future litigation that may or may not take place").

Therefore, the Court dismisses Claim Seven on the basis that it is moot.[2]

### C.    Claims Against Juana Scherman

Having determined that Claim Seven must be dismissed as to all Defendants, the Court must now decide whether Morcote has stated claims against Schurman for tortious interference with contract and prospective economic relations (Claims Two, Three, and Four, hereinafter, "the Interference Claims") and for negligent infliction of emotional distress (Claim Six).  The Court concludes that he has.

As a general rule, "corporate directors and officers are liable for corporate wrongs in which they actively participated."  *Frances T. v. Village Green Owners' Ass'n*, 42 Cal. 3d 490, 514 (1986) (concurrence).  "Director status neither immunizes a person from individual liability nor subjects him or her to vicarious liability."  *Id*.  However, there are two lines of cases – both of which Oracle relies upon – in which California courts have held that a supervisor or director may be immune from tort liability: 1) cases addressing the so-called "manager's privilege," *see, e.g., Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503 (1994); *Shoemaker v. Myers*, 52 Cal. 3d 1 (1990); *Kacludis v. GTE Sprint Commc'ns Corp.*, 806 F. Supp. 866 (N.D. Cal. 1992); and 2) cases addressing the co-employee

---

[2] The Court rejects Morcote's assertion that declaratory relief claim should not be dismissed because it serves as a predicate for recovery on other claims.  To the extent the issues raised in Claim Seven must also be resolved in order to prevail on other claims, the Court will address those issues as part of its inquiry respecting those claims.

privilege set forth in *Sheppard v. Freeman*, 67 Cal. App. 4th 339 (1998). The Court concludes that the cases involving manager's privilege do not apply. The Court further rejects *Sheppard* on the basis that it purported to create a broad privilege that is not consistent with established California Supreme Court precedent.

### 1.     Manager's Privilege

Oracle asserts that Schurman cannot be held individually liable on the Interference Claims or her claim for Negligent Infliction of Emotional Distress because Schurman was acting as an agent of Oracle and therefore, is protected by the manager's privilege. In support of this position, it relies primarily on *Shoemaker*, *Applied Equipment*, and *Kacludis*.

In *Shoemaker*, the California Supreme Court addressed whether an employee who had been terminated could sue his supervisor for the tort of inducement of breach of contract on the theory that his supervisor's role in bringing about his termination induced his employer to breach its contract with him. 52 Cal. 3d at 24. The court held that he could not, reasoning that the supervisor was acting as an agent for the employer and thus, the claim, in essence, alleged that the employer induced a breach of contract with itself. *Id*. at 25. The court concluded that such a claim was indistinguishable from a breach of contract claim against the employer and on that basis dismissed the claim. *Id*.; *see also Kacludis*, 806 F. Supp. at 873 (relying on *Shoemaker* in holding that employee who sued former supervisor for interference with prospective business advantage on basis that supervisor was responsible for his termination failed to state a claim).[3]

In *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994), the California Supreme Court applied the principle articulated in *Shoemaker*, although no managers or supervisors were individually sued. There, the plaintiff was a subcontractor ("Applied") that had entered into a contract with the defendant ("Litton") to procure certain equipment for it, for which it was to receive a commission. *Id*.

---

[3] The Court notes that the term "manager's privilege" is not actually used in *Shoemaker*, although the description of the manager's privilege is consistent with the principles articulated in *Shoemaker*. The manager's privilege has been described in another California case as follows: "The privilege to induce an otherwise apparently tortious breach of contract is extended by law to further certain social interests deemed of sufficient importance to merit protection from liability. Thus, a manager or agent may, with impersonal or disinterested motive, properly endeavor to protect the interests of his principal by counseling the breach of a contract with a third party which he reasonably believes to be harmful to his employer's best interests." *Olivet v. Frischling*, 104 Cal. App.3d 831, 840-841 (1980).

at 507. Instead, Litton, in order to avoid paying the commission, entered into an agreement with a third party ("Varian") to obtain the equipment directly. *Id*. Applied sued Litton and Varian, asserting, *inter alia*, that Litton and Varian had conspired to interfere with Litton's contract with Applied. The court held that Applied's conspiracy claim failed because it amounted to a claim of interference with its own contract, which could only be brought as a breach of contract claim. *Id*. at 513. The court explained its reasoning as follows:

> California recognizes a cause of action against noncontracting parties who interfere with the performance of a contract. "It has long been held that a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 [270 Cal. Rptr. 1, 791 P.2d 587], italics added.) . . . However, consistent with its underlying policy of protecting the expectations of contracting parties against frustration by outsiders who have no legitimate social or economic interest in the contractual relationship, the tort cause of action for interference with a contract does not lie against a party to the contract. (*Shoemaker v. Myers*, supra, 52 Cal. 3d at pp. 24-25; *Kelly v. General Telephone Co.* (1982) 136 Cal. App. 3d 278, 288 [186 Cal. Rptr. 1844]; *Dryden v. Tri-Valley Growers* (1977) 65 Cal. App. 3d 990, 998 [135 Cal. Rptr. 7200].) Applied's conspiracy theory is fundamentally irreconcilable with the law of conspiracy and the tort of interference with contract as just discussed. One contracting party owes no general tort duty to another not to interfere with performance of the contract; its duty is simply to perform the contract according to its terms. The tort duty not to interfere with the contract falls only on strangers- interlopers who have no legitimate interest in the scope or course of the contract's performance.

*Id*.

The facts here are obviously distinguishable from those in the cases discussed above in that Morcote does not sue Schurman for interference with his contractual relationship with Oracle (in which case, he would be asserting a claim that Oracle interfered with its own contract). Rather, he sues based on her alleged interference with his contract with a third party, CPS. As the California Supreme Court made clear in *Applied*, a claim for interference against a stranger to the contract as to which interference is alleged – which Schurman is in this case – does not fall within the ambit of the principle articulated in *Shoemaker* and *Applied*. Further, none of these cases stands for the broad proposition that managers may not be sued in tort for actions taken in the scope of their employment. Therefore, this line of cases does not

9

support dismissal of Morcote's Interference Claims or his claim for Negligent Infliction of Emotional Distress.

### 2. Co-Employee's Privilege

Oracle also relies on *Sheppard v. Freeman*, 67 Cal. App. 4th 339 (1998) in support of its position that an employee cannot sue another employee for *any* actions taken on behalf of the employer – even if the act was taken outside the scope of employment and with an unlawful motive.

In *Sheppard*, a former airline pilot sued former coworkers alleging that they had conspired to maliciously falsify data concerning his performance, resulting in his termination. 67 Cal. App. 4th at 342-343. The court of appeal addressed what it described as an issue of first impression: "[w]hether an employee or former employee can sue other co-employees individually based on their conduct relating to personnel actions." *Id*. at 343. It concluded that an employee could not, setting forth a broad privilege for the actions of co-workers taken in relation to personnel actions. *Id*. at 347. In his dissent, however, Justice Kremer argued at length that this "sweeping new immunity" was unnecessary, ill-conceived and contrary to established law. *Id*. at 352-354. Echoing these concerns, the court in *Graw v. Los Angeles County Metro. Transp. Auth.*, 52 F. Supp. 2d 1152 (C.D. Cal. 1999) concluded that the California Supreme Court would not endorse the privilege set forth in *Sheppard* and on that basis declined to follow *Sheppard*. The Court finds the reasoning of *Graw* persuasive. Thus, to the extent that Oracle relies on the privilege articulated in *Sheppard*, its argument fails. Oracle has failed to establish that Morcote can articulate no set of facts in support of the remaining claims against Schurman, as required to prevail on its motion.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED in part and DENIED in part as follows: Claim One is dismissed as to all Defendants, with prejudice, and Claim Seven is dismissed as to all Defendants, without prejudice. Claim Five and Claims Eight through Thirteen are dismissed with prejudice

as to Defendant Schurman. The Motion is DENIED as to the remaining claims asserted against Juana Schurman.

IT IS SO ORDERED.

Dated: November 23, 2005

JOSEPH C. SPERO
United States Magistrate Judge